**No. 15-1671** (Consolidated)

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**NEIL J RUTHER,** *et.al.*

*Appellants,*

**v.**

**WESTPORT PROPERTY INVESTMENTS LLC**

*Appellee.*

---

**Appeal From The United States District Court for the District of Maryland Northern Division**

---

## INFORMAL BRIEF OF APPELLANT NEIL RUTHER

## PURSUANT TO LOCAL RULE 34(b)

---

1

## Table of Contents

Page(s)

Table of Contents…………………………………………………………..……2

Table of Authorities…………………………………………………………..……3

JURISDICTIONAL STATEMENT…………………………………………….....4

QUESTIONS PRESENTED……………………………………………………..4

STATEMENT OF THE CASE………………………………………………….4

STATEMENT OF FACTS…………………………………………………....5

SUMMARY OF ARGUMENT…………………………………………13

ARGUMENT………………………………………………………………14

    I.        There Is Substantial Evidence That Attorney Kenneth
             Frank Limited The Scope of His Representation of IHW
             Development Entities As To Create a Material Dispute
             of Fact………….…………………………………..………14

    II.      The District Court Erred in Concluding That IHW Had
             Consented To or Acquiesced in the Filing of the Petition
             Because One of the Creditors Had Previously Been an Advisor
             and an Attorney for the Bankrupt Entity………………………21

CONCLUSION………………………………………………………22

CERTIFICATE OF SERVICE. …………………………………………....23

# Table of Authorities

Page(s)

<u>Cases</u>

*8375 Honeytree Blvd. Holdings, LLC v. Starman*, No. 11-12431,
2012 WL 683379 (E.D. Mich. Mar. 2, 2012)................................................18, 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986) ....................................................................14

*Attorney Grievance Comm'n of Maryland v. Lawson*, 428 Md. 102,
50 A.3d 1196, 1202 (2012)................................................................17, 18

*C.I.R. v. Banks,* 543 U.S. 426, 125 S. Ct. 826, 160 L. Ed. 2d 859 (2005)

*Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670 (4th Cir. 1967)..........................17, 18

*Girard v. Gill*, 261 F.2d 695 (4th Cir. 1958)..........................................18

*N. Carolina Joint Underwriting Ass'n v. Long*, No. 7:06-CV-28-WW,
2008 WL 320150 (E.D.N.C. Jan. 31, 2008) ..............................................15

*Proctor v. Metro. Money Store Corp.,* 579 F. Supp. 2d 724
(D. Md. 2008) .............................................................................17

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.,* 673 F.3d 294
(4th Cir. 2012) ...........................................................................14

*Schafer v. Barrier Island Station, Inc.,* 946 F.2d 1075 (4th Cir. 1991)

*United States v. United Marketing Ass'n*, 291 F.2d 851 (8th Cir. 1961)..................18

*Williams v. Staples, Inc.,* 372 F.3d 662 (4th Cir. 2004)...............................18

<u>Statutes</u>

18 U.S.C. § 3231................................................................................4

28 U.S.C. § 1291...............................................................................4

<u>Rules</u>

MD Lawyers' Rules of Professional Conduct 1.2(c).........................................15

## JURISDICTION

The District Court's judgment was a final order in which it had jurisdiction pursuant to 18 U.S.C. §3231. A timely appeal was filed by Ruther on June 16, 2015. This Court has jurisdiction over this matter pursuant to 28 U.S.C.§1291.

## QUESTIONS PRESENTED FOR REVIEW

1. Whether the District Court erred in concluding as a matter of law that attorney Kenneth Frank represented the IHW Development Entities for all purposes when there was substantial evidence constituting a material dispute of fact as to the scope of his representation.

2. Whether the District Court erred in concluding that IHW had consented to or acquiesced in the filing of the petition when one of the creditors had previously been an advisor and attorney for the bankrupt entity.

## STATEMENT OF THE CASE

This is an appeal from a judgment entered on the granting of a Motion for Summary Judgment (the Motion) in favor of Appellee Westport Property Investments LLC (hereinafter "Westport") by the United States District Court for the District of Maryland. (Northern Division) (Motz J.). On May 19, 2015 following its ruling on the Motion, the Court entered judgment against Appellants Neil J Ruther (hereinafter "Ruther") and Patrick Turner (hereinafter "Turner") in the amount of Forty Two Million Six Hundred and Ninety Five Thousand Six Hundred and Forty Three Dollars and Sixty Eight Cents ($42,695,643.68).

## STATEMENT OF FACTS

This is a claim to enforce a "springing or conditional guarantee" against individual members of a limited liability company pursuant to the terms of a mortgage on valuable property located in Baltimore City known generally as "Westport". The Appellee Westport Investments LLC is the holder of a note secured by a Deed of Trust from an initial lender.    The land encumbered by the obligation   was owned by two limited liability companies, Inner Harbor West  ("IHW") and Inner Harbor West II ("IHW II") (the business of  IHW and IHW II are sometime referred to herein as the  "Project"). Those entities were, in turn, owned by a limited liability company of  which entities owned by  Ruther and Turner were members. The ownership structure included CRP Westport Holdings LLC, a wholly owned entity of the venture capital fund Carlyle Group.  (Turner Aff. ¶4).

The underlying obligation is non-recourse as to any officer or member of IHW or IHW II. The terms of the limited or "springing  guarantees" of Turner and Ruther are set forth in a loan agreement (the "Loan Agreement") pursuant to which the Deed of Trust was issued. The Loan Agreement provided that Turner and Ruther would have personal liability for a default under the loan *only* if IHW or IHW II filed a petition in bankruptcy or "consented or acquiesced" in the filing of such a petition by a third party.  The conditions triggering the limited personal guarantee are contained in Section 8.24 (D) of  the Loan Agreement, the only provisions that are relevant to this case. It provides as follows:

> It is understood that neither the Note nor any other Indebtedness obligation or liability under or with respect  to this Agreement and any other Loan Document may be enforced against any Person described in clauses (i) through (v) above; provided , however, that the foregoing provisions of this paragraph shall not:

5

\*   \*   \*   \*   \*

(D) prevent recourse to Borrower, Mortgagor and the Guarantor and their respective assets for repayment of the Indebtedness, and the Indebtedness shall be fully recourse to the Borrower, Mortgagor and the Guarantor, in the event that any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, ***shall be filed*** (a) by Borrower or Mortgagor (B)against borrower or Mortgagor ***with the consent or acquiescence of Borrower, Mortgagor, Guarantor or any of their respect Affiliates***.

Emphasis added.

Thus the personal liability of the guarantors, Turner and Ruther, was only triggered if IHW or IHW II either filed, consented to or acquiesced in another creditor's ***filing,*** a bankruptcy petition against the owners of the property.

In its one page Memorandum decision on summary judgment, the District Court incorrectly found that through the actions of an attorney, Kenneth Frank, IHW "cooperated in the filing of bankruptcy proceedings" by two creditors of the Company. The Court did not find that any of the guarantors "consented" to the filing of a bankruptcy. It obviously equated acts which appeared to it to be helpful to the filing creditors with actual "acquiescence" [1] in the filing. This finding by the District Court was contradicted by material evidence that Turner specifically opposed the filing of the involuntary petition.

The scope of the activities of Mr. Frank and whether he represented IHW for the purpose of inducing third party creditors to file an involuntary bankruptcy were matters about

---

[1] The term "acquiesce" is defined in Random House Unabridged Dictionary (2nd Edition) as "to assent tacitly; submit or comply silently, without protest".

which there were significant and material disputes of fact which should preclude summary disposition of this case. From the Affidavits of Mr. Frank, Appellant Turner and the deposition of Thomas Fore, a creditor of the Company, a simple narrative of the circumstances leading to the filing of the involuntary bankruptcy can be reconstructed.

Following the collapse of the real estate markets in 2008,   IHW and IHW II through Westport Development LLC (hereinafter the Development Entities)  sought to find additional capital with which to restructure the debt held then by CitiGroup Global Markets Realty Group (hereinafter CitiGroup), the original lender to the project.[2] Following a default the Development Entities entered into an agreement with CitiGroup  in which it agreed to forebear from enforcement action for a period of time and offered to sell the loan to the development entity at a substantial discount. (The Deed in Lieu Event Agreement).  In order to recapitalize the project, on February 23, 2011, Mr. Turner in his capacity as managing member of  the Development Entities entered into an agreement (the "Fore Agreement,") with Tiderock Holdings LLC and Tiderock Capital LLC, companies owned by Thomas Fore.  (See Plaintiff's Exhibit No. 10 below) (Recital "F" and ¶ 2 and 3) (Copy attached hereto for convenience).

Pursuant to the Fore Agreement, Mr. Fore and his development entity undertook to do two things. First, he agreed to loan $600,000 to provide sufficient funds to the project to cause CitiGroup to extend the Deed in Lieu Event Agreement. The Fore entities in fact loaned far more than they were obligated to pursuant to the Agreement; somewhere between $2.1 and 2.2 million. (Fore Deposition 22:14-20). Second, he agreed to attempt to raise the capital necessary to pay or compromise the CitiGroup note and recapitalize the Project. (Plaintiff's Exhibit 11, Fore Dep., at 21:2-11; 22:1-22 & 23:1-12).  By virtue of his agreement with IWH, Fore would

---

[2] It is not disputed that the Note was purchased by Westport Property Investments LLC or that it was in default at the time of the bankruptcy filing.

have had significant rights to approve and direct the future construction on the project had he been successful in raising the necessary capital. (Frank Aff. ¶ 27 ).

Beginning in October, 2012, Kenneth Frank, who previously represented Fore in unrelated matters, (Frank Aff. ¶ 3) became involved on Fore's behalf with respect to the efforts to obtain capital with which to refinance the now in default obligation of CitiGroup.

On January 24, 2012, Citibank began to advertise a foreclosure sale of the Westport property, scheduled for February 10, 2013.  Until shortly before that time, Mr. Fore and Mr. Turner believed it would be possible to raise the funds. However it became apparent for reasons not relevant to this appeal that such expectations would not be realized. (Frank Aff. ¶ 18).

The most obvious solution to protect the Westport property and provide sufficient time to obtain control of the Citigroup Note by attracting new investors was for IHW and/or IHW II to file a Chapter 11 bankruptcy case.   Mr. Frank, who is not a bankruptcy lawyer, volunteered to determine what would be involved in such a filing. (Frank Aff. ¶18).  Mr. Frank knew Jeffrey Sirody, Esq., a bankruptcy attorney and contacted him to seek information about a potential bankruptcy filing and to determine whether he might serve as counsel to the debtor if it proceeded with a bankruptcy.  (Frank Aff. ¶ 18).

Mr. Fore was by that time a substantial creditor of IHW, and knew that Dixie Construction had obtained a judgment against IWH. (Plaintiff's Exhibit 11, Fore Dep. at 128:15-21 & 129:1-6). In connection with prior due diligence about the project, Mr. Turner had given Patrick Rhodes, an employee of Mr. Fore's, information about outstanding debts of the project. (Plaintiff's Exhibit 11, Fore Dep., at 128-129:15-21,2-6).  Mr. Frank asked for, and Mr. Turner

8

provided, a list of other creditors of IHW in preparation for a possible voluntary bankruptcy filing. (Turner Aff. ¶ 12).

The operating agreement of the parent entity of IHW and IHW II provided that filing a bankruptcy case required the approval of CRP Westport Holdings, LLC ("CRP"), an entity owned by Carlyle Partners. (Turner Aff. ¶5).   Mr. Turner believed CRP would authorize him to file a Chapter 11 case. (Turner Aff. ¶13). A telephone conference was scheduled for January 30, 2013, with George Ruhlen, the Carlyle representative. (*Id.*) During that conversation Mr. Ruhlen made it clear that Carlyle would not permit the filing of a bankruptcy in any form because of potential adverse implications for investors in its real estate funds. (Turner Aff ¶ 14). Immediately following that telephone call, when Mr. Turner informed Mr. Ruther for the first time that he had sought Carlyle's approval for a bankruptcy, Mr. Ruther advised him that filing a bankruptcy for IHW or IHW II would trigger the personal guarantees which are the subject of this litigation. (Turner Aff. ¶15-16).  Consequently, Mr. Turner advised Mr. Fore and Mr. Frank that no bankruptcy could be filed for IHW or IHW II.  (*Id.*) (*See also*, Fore Dep., *infra.*).

Prior to the discussions with Mr. Ruhlen and Ruther and while Turner was considering whether a reorganization could be filed, Mr. Frank asked for and Turner supplied a list of creditors. On January 29, 2013 Frank asked for a list of the creditors via an e mail. (Plaintiffs Exhibit 22) and again on the morning of the 30th of January before the conversation with either Mr. Ruhen of Carlyle or Ruther the request was renewed (Plaintiff's Exhibit 23).   Turner's affidavit makes it clear that this action was taken only in the process of  evaluating a course which was abandoned only a short time later. (Turner Aff. ¶12).  This fact is crucial as the District Court appears to have relied on the exchange of this information with Mr. Frank as the lynchpin of its holding that the conditional guarantee was violated by Frank's participation.

At Mr. Fore's request, on January 31, 2013, Mr. Frank obtained information from Mr. Sirody about involuntary bankruptcy cases. (Frank Aff. ¶ 22). There is no evidence that at this time Sirody represented any of the Development Entities. Mr. Fore decided that filing an involuntary bankruptcy was his only option to avoid losing his money. (Fore Dep. at 130:1-7). When he informed Mr. Turner of his intention to pursue an involuntary bankruptcy, Mr. Turner was very upset and told Mr. Fore he was opposed to it because he was concerned it might trigger the conditional guarantee. (Fore Dep. at 131: 14-19). Mr. Fore's response was he was not bound by any agreement with CitiGroup and Mr. Turner could not prevent him from doing what was necessary to protect the money owed him and preserve the opportunity to acquire the CitiGroup note. (Frank Aff. ¶ 23-24) (Fore Dep.at 131:10-21). At that deposition Mr. Fore testified at pp. 125-126:

> My question is: When you and Mr. Frank and
> 19 Mr. Ominsky and Mr. Sirody all began moving forward on
> 20 an involuntary, did Mr. Turner do anything to help?
> 4 A I believe, at the time, Pat was opposed to
> 5 the bankruptcy, to us filing a Chapter 7 because he was
> 6 concerned about his liability under the loan, you know.
> 7 Q But that's not my question.
> 8 My question is: Did he, at some point,
> 9 take steps to help you file the involuntary?
> 10 A No.

Mr. Fore was also quite specific that except for matters pertaining to refinancing and the threat from potential investors, Mr. Frank represented only his interests. At page 128 of his deposition he states:

> Who did he understand you were representing
> 3 with regard to the bankruptcy at that time?
> 4 A I mean, my feeling is that Kenny has always
> 5 represented me and my interest. As I said, I think
> 6 that in some cases where there's a need to have him

10

7 communicate with other people, you know, whether it was
8 under this scenario or related to the Vision and the
9 loan and that stuff, you know, that he represented
10 Pat's and my interest in very specific incidences.

Later, at page 130 Mr. Fore makes it clear that the decision to file a bankruptcy petition was his alone.

Q Okay. And you at some point decided --
3 what you're telling me today is that you, as a
4 creditor, were going to pursue your remedies against
5 Inner Harbor West over the objections of Pat Turner,
6 correct?
7 A Correct.

Mr. Fore instructed Mr. Frank to proceed to do what was necessary to file an involuntary bankruptcy, and Mr. Frank contacted potential creditors to join in the filing. He obtained the consent of Dixie Construction, a judgment creditor, and Cara Frye, Esq., a consultant and lawyer who was owed over $100,000. (Frank Aff. ¶25-28).

Mr. Fore's agreement with Mr. Turner pursuant to which he lent the Westport entities over $2 million in forbearance payments and operating costs, provided that upon a successful refinance, Mr. Fore would have a first lien on all of the Westport real estate and until his loan was repaid, and his consent would be required for any significant actions in connection with the development. (Frank Aff. ¶ 27). Because he would have such authority, Mr. Fore instructed Mr. Frank to give assurances to Robert Schulman, Esq., Dixie Construction's attorney, that it was his intention to pay Dixie's claim in full, to utilize their services in future development of the project provided they were competitive, and to reimburse Dixie for any costs incurred in connection with the bankruptcy. (Frank Aff. ¶27).

11

Upon Mr. Sirody's recommendation Mr. Frank engaged Marc Ominsky to represent the petitioning creditors, and Mr. Fore agreed to pay the costs. On February 8, 2013, Mr. Ominsky filed the involuntary bankruptcy. (Frank Aff. ¶30-31). Thereafter, based on Mr. Sirody's belief that (a) conversion of the bankruptcy to a Chapter 11 would not violate the guarantee, and (b) that Mr. Turner had a fiduciary obligation to the investors to do so, Mr. Turner agreed to retain Mr. Sirody and the involuntary Chapter 7 case was converted to a Chapter 11. (Turner Aff. ¶19-20).

The record as assembled by Appellee Westport also contains evidence that Mr. Frank had limited the scope of his representation to those matters which involved attempts to raise capital and to represent the interests of Mr. Fore only when it became necessary. In Westport's Exhibit 26, an e mail dated February 7, 2013 to attorneys Mark Friedman and Mark Fields, Frank states " (a) I represent Tom Fore generally, and (b) at least for the time being I represent Pat Turner, Westport Development LLC and Westport Partners LLC solely in connection with the acquisition of the Citibank note…" (*Emphasis added*).

Moreover, in the pivotal exchange with counsel for Dixie Construction concerning its willingness to participate in an involuntary bankruptcy, one on which the District Court placed so much emphasis, counsel repeated the contents of an earlier verbal exchange with Mr. Frank in which he clearly identified himself as counsel only for Mr. Fore. (*See* Plaintiffs Exhibit 31).

12

## SUMMARY OF ARGUMENT

The District Court's brief opinion granting summary judgment appears to rely exclusively on the notion that Mr. Frank was acting as counsel to Turner and the Development entities for the purposes of filing an involuntary bankruptcy by third party creditors. This conclusion was drawn primarily from two conclusions, both of which were the subject of both factual and legal disputes which preclude summary disposition.

First, the Court reasoned that Frank must have been acting on behalf of both Fore and Turner and the Development entities since to assume otherwise would necessarily lead to the conclusion that he was engaged in unethical behavior, presumably a conflict of interest. This conclusion is contradicted by evidence that Frank had specifically and clearly limited the scope of his representation as he certainly was permitted to do by the Rules of Professional Responsibility. It is further contradicted by evidence that he was specifically instructed to take no action on behalf of Turner or the Development Entities after Turner discovered the restrictions of the conditional guarantee. [3]

Second, the Court observed that in this alleged role Frank solicited the names of creditors to bring an involuntary petition. This conclusion was disputed by the statements of both Frank and Turner that such a solicitation was made in the context of an entirely different purpose and occurred before Turner issued specific instructions that no bankruptcy would be filed.

Third, the Court relied on the fact that Frank communicated with Jeffrey Sirody who eventually represented the debtor. Mr. Sirody had nothing whatever to do with the **filing** of the involuntary petition and therefore cannot be said to have participated in any way in the violation

---

[3] The Court's statement that Frank should not be assumed to have engaged in unethical behavior is unsupported in the law since such a determination is not the subject of an assumption but a matter to be proven or disproven at the time of trial.

of the conditional guarantee. Frank's Affidavit raises the factual dispute that he only contacted Sirody in January of 2013 when the parties were considering a plan to file a reorganization which was later abandoned based on the position of Carlyle and the advice of Ruther. To hold that Turner "acquiesced" in an action which he specifically demanded not be taken defies the very definition of the word, particularly since there was evidence casting doubt on whether Frank represented Turner for that purpose at all. (Turner Aff. ¶ 10).

## ARGUMENT

This court should review *de novo* the district court's grant of summary judgment. *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir.2012). Summary judgment is only appropriate when there is no genuine issue of material fact. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the factual dispute may affect the outcome of the case and a reasonable factfinder could find a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

I.   There Is Substantial Evidence That Attorney Kenneth Frank Limited The Scope of His Representation of IHW Development Entities As To Create a Material Dispute of Fact.

The issue of whether Mr. Turner acquiesced to the bankruptcy filing is principally a factual determination that requires consideration of the circumstances surrounding the scope of Mr. Frank's representation of Mr. Turner, and Mr. Turner's ratification, or lack thereof, concerning the same. Further, the District Court's election to highlight Frank's potential conflict of interest underscores the highly factual determination regarding the scope of Mr. Frank's representation. In other words, Mr. Frank may have represented only Mr. Fore's interest to the detriment of Mr.

14

Turner's interest despite the dual representation; or stated another way, Mr. Frank could not have been representing Mr. Turner's interest when he orchestrated the involuntary bankruptcy.

The Supreme Court has stated that the attorney-client relationship is a "quintessential" principal-agent relationship because the client "retains ultimate dominion and control over the underlying claim." *See C.I.R. v. Banks*, 543 U.S. 426, 427, 125 S. Ct. 826, 827, 160 L. Ed. 2d 859 (2005)(noting that an attorney is an agent who has a duty to act in the principal's interest). For example, in the context of contract formation, the general rule is that an individual not a party to the contract can become liable on a contract through the creation of an agency relationship where the attorney is acting on behalf of the client. *N. Carolina Joint Underwriting Ass'n v. Long,* No. 7:06-CV-28-WW, 2008 WL 320150, at *13 (E.D.N.C. Jan. 31, 2008). A client will be held liable on a contract formed by her attorney acting on her behalf with a third party when (1) the attorney is acting *within the scope of his actual authority*; (2) when the contract, although unauthorized, has been ratified, and (3) when the attorney acts within the scope of his apparent authority. *Id.* (emphasis added).

First, with respect to actual authority, Maryland Lawyers' Rule of Professional Conduct 1.2(c) allows attorneys to limit the scope of representation. See, *Atty. Griev. Comm'n v. Lawson*, 428 Md. 102, 113 (2012)(finding no violation of Rule 1.2(c) where the attorney refused to represent the client in an unrelated credit dispute). The comments to the Rule adds clarity to the concept:

> Agreements Limiting Scope of Representation. -- [6] The scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the insurance coverage. A limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation

15

is undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives...

The record in this case was replete with evidence that Turner, Fore and Frank understood and agreed that Frank would represent the interests of IHW or the Development entities only with respect to obtaining financing for the Project or defending its interests in the face of alleged dishonesty by a particular group of potential investors. Once it was determined that Turner had elected not to proceed with further consideration of a bankruptcy reorganization, Frank's role in pursuing the matter was only on behalf of his client Fore. To hold otherwise would have required the District Court to make judgments concerning the credibility of Fore, Frank and Turner who all stated that no representative of IHW or the Development Entities counseled or assisted in the filing of the involuntary petition. This Court has held that such an evaluation is improper in the context of a Rule 56 motion. In *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir. 1967) the panel wrote:

> It is obvious that in considering Sun's motion, the court did not give Cram the benefit of all favorable inferences which could be drawn from the evidence. It is further apparent that the district court necessarily passed upon the credibility of witnesses Cram and Wahab in reaching its conclusion. Clearly the credibility of a witness is a factual issue which precludes summary judgment. *E.g., United States v. United Marketing Ass'n*, 291 F.2d 851 (8 Cir. 1961); *Girard v. Gill*, 261 F.2d 695, 697 (4 Cir. 1958). 375 F.2d at 674.

Second, the Fourth Circuit has found that absence express or implied authority does not preclude a claim of apparent authority. *Schafer v. Barrier Island Station, Inc.*, 946 F.2d 1075, 1079 (4th Cir. 1991). Apparent authority arises from manifestations of the principal to third parties about the authority of the attorney. See *Id.* (quoting the Restatement (Second) of Agency, "apparent authority results from a manifestation by a person that another is his agent"). Mr. Fore did not receive any manifestations from Mr. Turner about Mr. Frank's authority to act on behalf

of Mr. Turner in the filing of the bankruptcy as to constitute "acquiescence." In fact, in Fore's Deposition, he testified that not only did Mr. Turner not do anything to aid in the filing of the involuntary petition, but that he believed that Mr. Turner was opposed to the filing because he was concerned about his liability under the loan. (Fore Dep. at 125:18-20; 126:4-10). Mr. Fore also testified that he believed Mr. Frank represented him in the filing of the bankruptcy and that he represented Mr. Turner's interests in "very specific incidences." (Fore Dep. at 128:2-10).

Finally, the District Court of Maryland has found that even if an agent acts outside the scope of the actual or apparent agency relationship, "a principal is bound by the unauthorized acts of the agent if the transaction is not promptly rejected or is ratified in whole or in part." *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 740 (D. Md. 2008). Such ratification can be inferred by "words, conduct, or silence on the part of the principal that reasonably indicates its desire to affirm the unauthorized act." *Id.* It is clear that Mr. Turner opposed the filing of the bankruptcy petition once Mr. Ruther warned that such filing would trigger the personal guarantee. (Turner Aff. ¶15-16). At no point was this course of action ratified by Mr. Turner, and he was in fact was directly and expressly opposed to such a recourse.

As to the question of Mr. Frank's communications with Mr. Sirody, there is no evidence in the record that Sirody had anything whatsoever to do with the filing of the involuntary petition, which is the only action which could have triggered liability under the conditional guarantee. The plain language of the guarantee does not sanction the prosecution of reorganization once third party creditors have filed an action without the consent or acquiescence of the guarantors. Sirody became counsel to the debtor only after the filing of the Petition. The fact that Frank had merely spoken with Sirody when the parties were considering a course of action that was later abandoned or that Sirody subsequently represented the debtor when it

became apparent that IHW had a fiduciary responsibility to protect its investors by converting the case to a Chapter 11 does not establish that Frank was representing IHW for purposes of filing the involuntary petition.

In reviewing a grant of summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party in determining whether a genuine issue of material fact exists as to preclude summary judgment. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Mr. Frank's action of filing the involuntary petition should create an inference that Mr. Frank was acting solely on behalf of Mr. Fore in furthering his interests as to - at a minimum - create a genuine issue of material fact as to whether Mr. Frank's filing equated to Mr. Turner's acquiescence of the petition.

The District Court limited its ruling on summary judgment to the impact of the actions of Kenneth Frank, the attorney for Thomas Fore, a creditor and investor in the Development Entities. The Court below did not hold that either Ruther or Turner, individually or in any official capacity, took any action which would have triggered liability under the conditional guarantees.[4] Rather the Court simply concluded that three actions taken by Frank were attributable to Turner and the Development Entities: Those were:

1. Frank "solicited the names of creditors to bring an involuntary petition against Inner Harbor West LLC" (Memorandum Opinion p. 1),

2. Frank induced one of the petitioning creditors, Dixie Construction, to file the petition by promising Dixie Construction that it would be paid for doing additional site work. (Memorandum Opinion p.1), and

---

[4] The entire record demonstrates that except for advising Turner not to file a bankruptcy Ruther had no knowledge of or participation in any of the activities relating to the conditional guarantee or the bankruptcy.

3. Frank "communicated with Jeffery Sirody, who *eventually* became the bankruptcy counsel for Inner Harbor West, regarding *the filing* of the bankruptcy case." (Memorandum Opinion p.1) (Emphasis added).

The question of whether Frank did these things in the course of representing both his client Mr. Fore and IHW or only as counsel to Mr. Fore as a creditor was the subject of numerous factual and legal disputes supported by competent evidence in the record. Among these were:

1. Turner's affidavit acknowledging that Frank represented IHW only for the limited purposes of obtaining financing for the project. (Turner Aff. ¶7 and 10).

2. Turner's affidavit that Frank asked for and received a list of creditors of IHW only in the context of a discussion of a possible bankruptcy filing which was subsequently abandoned by Turner based on the position of Carlyle and the advice of Ruther. (Turner Aff. ¶ 11-15).

3. The affidavit of Frank reciting that only Fore was his client (Frank Aff. ¶ 34); he did not represent IHW or any of the Development Entities in connection with the filing of any bankruptcy case (Frank Aff. ¶35); he only represented the Development Entities in connection with matters relating to financing for the Project. (Frank Aff. ¶36); he only solicited the names of creditors of IHW in the course of discussions of possible filing of a reorganization by IHW which plans were later abandoned and to make sure that accurate pro forma projections could be prepared to present to possible investors (Frank Aff. ¶18); that in discussions with Dixie Construction's counsel he gave assurances that it would be considered for future work on the Project only as a

representative of Fore who would have been in a position to have influenced those decisions had the Project obtained financing and gone forward (Frank Aff. ¶27); that Turner had issued instructions that IHW would not file any bankruptcy proceeding but that Fore believed it was necessary to protect his substantial investment and so directed Frank to proceed (Frank Aff. ¶23-24); that once the decision was made to file an involuntary bankruptcy over Turner's objections he restricted his communications with Turner to matters relating to the efforts to raise capital. (Frank Aff. ¶38).

4. Fore's testimony at deposition that Turner opposed the filing of a bankruptcy and that he (Fore) advised Turner he would proceed with the action regardless of Turner's position. (*See* Fore Dep., *supra.*)

5. Frank's clear and unequivocal statements to third parties of the limitations of his representation. (E-mail from Frank to Mark Friedman on February 7, the day before the filing of the involuntary petition, Plaintiff's Exhibit 26) and (E-mail from Counsel to Dixie Construction dated February 8, 2013, Plaintiff's Exhibit 31).

II.     The District Court Erred in Concluding That IHW Had Consented To or Acquiesced in the Filing of the Petition Because One of the Creditors Had Previously Been an Advisor and Attorney for the Bankrupt Entity.

It is unclear what reliance the District Court placed on its observation that one of the petitioning creditors was Cara Frye whose company Cara Frye and Associates was a former advisor to and counsellor for IHW and the Development Entities. In a footnote, the Court merely states that this fact is "noteworthy" and directs attention to the case of *8375 Honeytree Holdings v. Starman,* 2012 WL 683379 (E.D. Mich. 2012), 2012 U.S. Dist. LEXIS 27761. If the Court below relied on that case to any degree in reaching its decision it must be also noted that

the case is clearly distinguishable from the case at bar. In *Honeytree* the District Court considered a defense to the enforcement of a springing personal guarantee in loan documents triggered by the filing of a bankruptcy by the debtor. The debtor argued that the triggering event (the <u>filing</u> of a petition) did not occur because it was later determined that the filing was not properly authorized. The Court held:

> <u>Borrower's attorney</u> submitted a voluntary bankruptcy petition on Borrower's behalf in the Bankruptcy Court for the Eastern District of Michigan. See Pl.'s Br. Ex. 12. Thus, the petition was "filed," despite the lack of proper authorization. (Emphasis added)

The obvious distinction between that case and this one is that it was clearly the Borrower's attorney who filed the bankruptcy case and the bankruptcy was filed on behalf of and in the name of the Borrower. The trial court merely held that the subsequent attempt to withdraw the bankruptcy did not make the initial filing void *ab initio* and therefore the triggering event had occurred. The central issue in this case is whether Mr. Frank was acting on behalf of the Borrower at all, a matter about which there was, in fact, considerable dispute.

Moreover, in her deposition Ms. Frye testified that she had not worked for the Development entities since 2011 (Plaintiff's Exhibit 29, Frye Dep. at 23:8-10), two years prior to the filing of the Petition, and that she was owed a considerable sum of money. There is no evidence in the Appellee's presentation to the Court below that at the time of the filing of the involuntary petition IHW or any of the Development Entities had any control or even influence of the actions of Ms. Frye. She clearly was not the agent of the Companies at that time.

## CONCLUSION

For the reasons stated herein the judgment of the United States District Court for the District of Maryland should be reversed and the case remanded for trial.

Respectfully submitted,

Mathew G. Hjortsberg
Federal Trial Bar No. 024949
BOWIE & JENSEN, LLC
29 West Susquehanna Ave
6th Floor
Towson, Maryland 21204
Tel: 410 583 2400
Fax: 410 583 2437
Counsel to Appellant Ruther

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of August 2015 I served a copy of the foregoing Informal Brief on all counsel of record by filing it with the Courts ECF system and on Patrick Turner, *pro se,* by regular mail at 4 Roland Brook Court, Lutherville, Maryland 21093.

Mathew G. Hjortsberg